UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joel Mateo,<br><br>              Plaintiff,<br><br>v.<br><br>University System of New Hampshire and Frances Canning,<br><br>              Defendants. | Civil Action No.: 1:18-cv-11953-FDS<br><br>JURY TRIAL DEMANDED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The Defendants, University System of New Hampshire and Frances Canning ("Ms. Canning") (collectively, the "Defendants"), hereby respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss.

### PRELIMINARY STATEMENT

The Plaintiff, Joel Mateo ("Plaintiff"), has filed a four (4) count Complaint arising from his withdrawal from the University of New Hampshire School of Law ("UNH Law") while under investigation for violating the school's code of conduct. The counts include a federal claim brought pursuant to 42 U.S.C. § 1983 for due process violations under the Fourteenth Amendment, and common law claims for defamation, negligent infliction of emotional destress, and intentional infliction of emotional distress.

The Defendants now move to dismiss the Complaint in its entirety for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, the Defendants move to dismiss the common law defamation claim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and

respectfully request that this Honorable Court transfer this case to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF MATERIAL FACTS[1]

The University System of New Hampshire ("USNH") is a body politic established pursuant to N.H. RSA § 187-A:3, with an address of 5 Chenell Drive, Suite 301, Concord, New Hampshire. See Declaration of Catherine Provencher ("Provencher Dec.") at ¶ 2, attached hereto as Exhibit A. UNH Law is a component institution of USNH located in Concord, New Hampshire. Id. at ¶ 3. Neither UNH Law nor USNH have campuses in Massachusetts. Id. at ¶ 4. USNH currently employs eight individuals in Massachusetts who teach on-line courses as adjunct professors for Granite State College. Id. at ¶ 5. The adjunct professors teach on an as needed basis and do not teach if their classes do not fill. Id. USNH also currently employs five individuals who perform research-related work in Massachusetts for the University of New Hampshire. Id. at ¶ 6.

Ms. Canning is and was a resident of New Hampshire during the relevant time period. See Declaration of Frances Canning ("Canning Dec.") at ¶ 1, attached hereto as Exhibit B. Ms. Canning does not own any property in Massachusetts. Id. at ¶ 2.

On November 5, 2015, the Plaintiff voluntarily withdrew from UNH Law pending a charge alleging the violation of the school's Conduct Code. Complaint at ¶ 1. A year and a half later, on May 5, 2017, the Plaintiff contacted Ms. Canning, the Assistant Dean of Students, expressing a desire to address his standing at UNH Law in order to acquire a letter of good standing for use in future transfer applications to other law schools. Id. at ¶ 2. Ms. Canning provided the Plaintiff with the following options: (1) resolve the pending Conduct Code Charge

---

[1] For the purpose of this Memorandum of Law, the facts alleged by the Plaintiff are taken from the Complaint and assumed to be true. Accordingly, such facts are stated in the affirmative. However, the Defendants expressly reserve their right to challenge the Plaintiff's factual recitations in later responsive pleadings.

in accordance with UNH Law's Conduct Code, whereby Ms. Canning would issue a letter based on the investigation's conclusion; or, (2) Ms. Canning would issue a letter stating that the Plaintiff is ineligible to return to UNH Law until the pending Conduct Code Charge is resolved, whereby the Plaintiff could include a response to the letter for prospective law schools. Id. at ¶ 3. The Plaintiff ultimately elected to move forward with the second option. Id. at ¶ 5.

On May 24, 2017, Ms. Canning produced a letter to the Plaintiff which explained his current standing at UNH Law. Id. at ¶ 7. On June 30, 2017, the Plaintiff applied to Suffolk University Law School. Id. at ¶ 8. Subsequently, on July 13, 2017, Ms. Canning submitted the letter to Suffolk University Law School. Id. at ¶ 9. The Plaintiff was denied admission to Suffolk University Law School on July 27, 2017. Id. at ¶ 10.

Thereafter, on August 7, 2017, the Plaintiff contacted Ms. Canning and indicated that he would like to resolve the pending Conduct Code Charge against him. Id. at ¶ 11. In response, Ms. Canning informed the Plaintiff that UNH Law would only investigate a pending charge against a currently matriculated student. Id. at ¶ 12. As such, the Plaintiff would have to confirm his desire to re-enroll in the program. Id.

On January 16, 2018, the Plaintiff contacted Ms. Canning and informed her that he would like to re-enroll at UNH Law. Id. at ¶ 16. Because it had now been over two years since the Plaintiff had voluntarily withdrawn from UNH Law, Ms. Canning informed the Plaintiff that he would have to reapply to UNH Law with advance standing. Id. at ¶ 17. Ms. Canning also informed the Plaintiff that if he was extended an offer of admission, then UNH Law could resolve the pending charge against the Plaintiff. Id.

On March 19, 2018, the Plaintiff submitted an application to UNH Law. Id. at ¶ 18. The Plaintiff was denied admission to UNH Law on June 4, 2018. Id. at ¶ 19. Thereafter, the

Plaintiff applied to New England Law on July 13, 2018.  Id. at ¶ 20.  Prior to his application, the Plaintiff contacted Ms. Canning on July 12, 2018, and requested that she send a copy of the letter she had previously produced on May 24, 2017 to New England Law.  Id. at ¶ 21.  Ms. Canning submitted the letter to New England Law on July 18, 2018.  Id. at ¶ 22.  The Plaintiff was denied admission to New England Law on July 31, 2018.  Id. at ¶ 23.

## STANDARDS OF REVIEW

**A.     Personal Jurisdiction**

When jurisdiction is contested under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists.  Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008).  Courts "may choose from among several methods for determining whether the plaintiff has met [his or her] burden."  Id.  The available methods are the *prima facie* method, the preponderance method, and the likelihood method.  Id. at 26, n. 2.  The principle distinction between the *prima facie* method and the preponderance and likelihood methods is that former does not require an evidentiary hearing.  Id.  The *prima facie* method is the standard most commonly employed in the early stages of litigation.[2]  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58, n. 5 (1st Cir. 2016) (citation omitted).

Under the *prima facie* method, "the inquiry is whether the plaintiff has proffered evidenced which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  Phillips, 530 F.3d at 26 (citation omitted).  In order to make a *prima facie* showing of jurisdiction, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts."  Id. (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)) (quotation marks omitted).  Courts "must accept the plaintiff's

---

[2] For a complete discussion of when an evidentiary hearing is appropriate under either the preponderance or likelihood methods, see Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-47 (1st Cir. 1995).

(properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the *prima facie* jurisdictional showing . . . and construe them in the light most congenial to the plaintiff's jurisdictional claim." Phillips, 530 F.3d at 26 (internal quotation marks and citations omitted). However, courts need not "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Courts may consider facts offered by defendants, but only to the extent that they are contradicted by the plaintiff's evidence. Id. (citation omitted).

**B.      Failure to State a Claim**

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007). However, the United States Supreme Court has made clear that a court should not "conclusory statements" set forth in a complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 686 (2009). Instead, federal courts must follow a two-step approach in assessing the sufficiency of a complaint in the face of a Rule 12(b)(6) motion. Id. at 680-81. First, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand. Id. at 678-79. The latter are not entitled to the presumption of truth and must be disregarded. Id. Second, the court must "consider the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." Id. at 681. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2008)). A plaintiff must show more than a sheer possibility that a defendant acted unlawfully and cannot rely on mere "labels and conclusions" to support a claim. Twombly, 550 U.S. at 555. If the

plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570.

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

The Supreme Court has long held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with the State such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal brackets omitted). In addition, this Court "must find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process Clause." Geis v. Nestlé Waters North America, Inc., No. 17-12165, 2018 U.S. Dist. LEXIS 110075, at *6 (D. Mass. July 2, 2018) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)) (internal quotation marks omitted); see also FED. R. CIV. P. 4(k)(1)(A) (providing that federal district courts may exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").[3]

---

[3] The First Circuit recently acknowledged but did not resolve the "tension" in its precedent interpreting the limits on personal jurisdiction imposed by Massachusetts' long-arm statute, M.G.L. ch. 233, § 3. See A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58-59 (1st Cir. 2016) (comparing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (interpreting Massachusetts' long-arm statute as coextensive with the outer limits of the Constitution) (citing 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972)), with Copia Commc'ns, LLC v. AMResort, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (suggesting that Massachusetts' long-arm statute may impose limits on the exercise of personal jurisdiction which is "more restrictive" than those required by the Constitution) (citing Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76, 80 (Mass. 1979)). This issue is not being briefed at this time as the Defendants contend that the facts of this case do not satisfy the limits placed on this Court's power to exercise personal jurisdiction over the Defendants by the Constitution. If the Court determines that the limits of the Massachusetts' long-arm statute must be determined to resolve this question, the Defendants respectfully request the opportunity to submit a supplemental brief on the issue of whether the Massachusetts' long-arm statute is more restrictive than the Constitutional limits, and whether the exercise of personal jurisdiction over the Defendants is not justified under the statute.

The Supreme Court recognizes two types of personal jurisdiction: general and specific. Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773, 1780-81 (2017) (citation omitted). "Adjudicatory authority is 'specific' when the suit 'arises out of or relates to the defendant's contacts with the forum.'" Goodyear, 564 U.S. at 924 (quoting Helicopteros Nacionales De Colombia v. Hall. 466 U.S. 408, 414, n. 8 (1984)) (internal brackets omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers, 137 S. Ct. at 1781 (citation omitted). General jurisdiction applies to "instances in which the continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." International Shoe, 326 U.S. at 318. The Complaint must be dismissed because this Court lacks both specific and general jurisdiction over the Defendants.

**A. This Court Does Not Have General Jurisdiction Over the Defendants**

Under the Supreme Court's stringent application of general jurisdiction set forth in Daimler v. Bauman, 517 U.S. 117 (2014), this Court lacks general jurisdiction with respect to the Defendants, because the Defendants are not "at home" in Massachusetts. Even under the pre-Daimler application of general jurisdiction, however, courts consistently declined to exercise general jurisdiction of institutions of higher learning. For both of these reasons, this Court does not have general jurisdiction over the Defendants.

**i. This Court lacks general jurisdiction over the Defendants**

General jurisdiction, in contrast to specific jurisdiction, applies to "situations where a foreign corporation's 'continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct

from those activities.'" Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citation and brackets omitted). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations within the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919 (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear, 564 U.S. at 924. "With respect to a corporation, the place of incorporation and principal place of business are 'paradigm . . . bases for general jurisdiction.'" Daimler, 571 U.S. at 137 (quoting Lea Brilmeyer et al., A General Look at General Jurisdiction, 66 TEXAS L. REV. 721, 735 (1988)).

The First Circuit Court of Appeals has not yet had the opportunity to discuss the implications of Goodyear and Daimler, however, several district courts within this district have recognized that the test set forth in those cases is more stringent than the previous general jurisdiction standard. See Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 368-69 (D. Mass. 2017) (collecting cases). In addition, multiple circuit courts of appeal have interpreted the decisions to mean that, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016) (noting that "at least three of our sister circuits have agreed with this reading of Daimler") (citing Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695, 698 (7th Cir. 2015), Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014), and Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)) (emphasis added).

Here, the facts do not support a finding of general jurisdiction. As discussed further below at Section I(B), the submission of the letters to Suffolk University School of Law and New England Law are insufficient to establish minimum contacts in Massachusetts, and the remaining acts giving rise to the Plaintiff's claims occurred in New Hampshire. In addition, Ms. Canning is a resident of New Hampshire and USNH is a body politic chartered under the laws of New Hampshire, with a principal place of business in New Hampshire. See Provencher Dec. at ¶ 2; Canning Dec. at ¶ 1. Nothing in the Complaint suggests that USNH is "essentially at home" in Massachusetts, or that this is an "exceptional" case such that the exercise of general jurisdiction would be appropriate. See Medici, 239 F. Supp. at 369 (declining to find general jurisdiction over a defendant incorporated under Rhode Island law with a principal place of business in Rhode Island).

Even if facts existed which justified a finding that USNH has "continuous and systemic contacts" with Massachusetts, the exercise of general jurisdiction would be inappropriate. See id. (declining to find general jurisdiction where the defendant had two locations in Massachusetts, employed individuals in Massachusetts, and served a portion of its clients in Massachusetts). The Medici Court relied upon Bulwer v. Mass. College of Pharm. & Health Scis., No. 1:13-cv-521, 2014 U.S. Dist. LEXIS 106365 (D.N.H. Aug. 5, 2014), for the proposition that even where the facts establish that the defendant has "continuous and systematic contacts" with the forum state, a finding of general jurisdiction is inappropriate under Daimler and Goodyear. Medici, 239 F. Supp. 3d at 369. In Bulwer, the plaintiff brought an action in the District of New Hampshire against the Massachusetts College of Pharmacy and Health Sciences (the "College"), asserting that the College had misappropriated copyrighted materials he had used as a teacher at the College. 2014 U.S. Dist. LEXIS 106365, at *1-*3. After concluding that

the events giving rise to the claim occurred in Massachusetts, id. at *9-*14, the court declined to find that the College was "at home" in New Hampshire under Daimler even though the College maintained a campus in New Hampshire and employed individuals in New Hampshire, and despite the fact that 6% of its student body took courses at its New Hampshire campus. Id. at *17-*18. Here, USNH does not have a campus in Massachusetts and employs only a small number of employees who work in Massachusetts. See Provencher Dec. at ¶¶ 4-6. Accordingly, there is no basis for a finding of general jurisdiction.

### ii. Exercise of general jurisdiction over institutions of higher education

Even if this Court were to determine that facts existed which were sufficient for a finding that USNH is "at home" in Massachusetts, a finding that this Court may exercise general jurisdiction over UNH Law would not comport with "traditional notions of fair play and substantial justice." While the First Circuit does not appear to have specifically addressed whether general jurisdiction can be exercised over an institution of higher education, numerous other federal courts have declined to do so. See, e.g., Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 541-43 (3d Cir. 1985) (no general jurisdiction despite foreign school's joint international program with local college and substantial advertising in local forum); Ross v. Creighton Univ., 740 F. Supp. 1319, (N.D. Ill. 1990) (no general jurisdiction despite college's employment of full-time recruiter in forum state), rev'd in part on other grounds, 957 F.2d 410 (7th Cir. 1992); Cassell v. Loyola Univ., 294 F. Supp. 622, 624 (E.D. Tenn. 1968) (no general jurisdiction despite universities extensive recruitment of athletes and students in forum state); see also Scherer v. Univ. Missouri Law School, 152 F. Supp. 2d 1278, 1282-83 (D. Kan. 2001) ("the plaintiff has directed the court to no case in which a university from a nonforum state has been

subject to the general jurisdiction of a forum state and, in fact, every case which the court has uncovered holds directly to the contrary.") (collecting cases).

The pre-Daimler exception to the assertion of general jurisdiction over institutions of higher education is generally based on the reasoning that "[a]dvanced educational institutions typically draw their student body from numerous states," and pre-Daimler general jurisdiction would "subject them to suit on non-forum related claims in every state where a member of the student body resides." Gehling, 773 F.2d at 543. As such, an institute cannot be subject to general jurisdiction for engaging in conduct which is "typical of nationally prominent universities." Martin v. Clemson Univ., No. 07-536, 2007 U.S. Dist. LEXIS 93703, *15 (E.D. Pa. Dec. 20, 2007) (citing Gehling, 773 F.2d at 542-43); see also Weil v. Am. Univ., No. 07-7748, 2008 U.S. Dist. LEXIS 1727, *11 (S.D.N.Y. Jan. 2, 2008) (no general jurisdiction where university had no contacts with forum state beyond those "commonly engange[d]" in by universities and colleges). Here, USNH's conduct in Massachusetts does not extend beyond commonly engaged in activities which are typical of nationally prominent institutions of higher education, and it cannot be subject to general jurisdiction. See Kurzon LLP v. Thomas M. Cooley Law Sch., No. 12-cv-8352, 2014 U.S. Dist. LEXIS 85776, at *4 (S.D.N.Y. June 24, 2014) (no general jurisdiction where Michigan law school solicited donations from New York alumni, solicited business in New York, sent representative to school fairs in New York, and offered a small number of externships in New York). Accordingly, this Court cannot assert general jurisdiction over the Defendants.

**B.     This Court Lacks Specific Jurisdiction Over the Defendants**

When a court performs the minimum contacts analysis set forth by International Shoe with respect to specific jurisdiction, the constitutional analysis is divided into three distinct

categories: relatedness, purposeful availment, and reasonableness. A Corp., 812 F.3d at 59 (citing Phillips, 530 F.3d at 27). More accurately, courts must consider the following:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable' and (3) whether the exercise of jurisdiction is reasonable.

C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (internal quotation marks, brackets, and citation omitted). Because the Plaintiff's claims directly arise out of and related to the Defendants actions in New Hampshire, and because the Defendants have not purposefully availed themselves of the privileges of conducting activities in Massachusetts, this court cannot assert specific jurisdiction over the Defendants.

Under the relatedness prong, a plaintiff must show "a demonstrable nexus between [his or her] claims and [the defendant's] forum-based activities, such . . . [that] the litigation is founded directly on those activities." Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011) (internal quotation marks and citation omitted). Here, the Defendants due process claim, negligent infliction of emotional distress claim, and intentional infliction of emotional distress claim directly rise out of the Defendants alleged denial of "an opportunity to be heard" and related actions concerning the resolution of the pending Conduct Code Charge, all of which occurred in New Hampshire.[4] See Complaint at pp. 7-8, ¶¶ a-i, n-aa. The only contacts with Massachusetts were the isolated acts of mailing the letters to Suffolk University School of Law and New England Law, which alone cannot lead to the conclusion that the Defendants violated the

---
[4] As argued below at Section II(A), which is incorporated herein by reference, the Plaintiff's defamation claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). As such, the operative facts which form the basis for the Plaintiff's remaining claims all occurred in New Hampshire and have no material connection to Massachusetts.

Plaintiff's due process rights in Massachusetts. See Sawtelle, 70 F.3d at 1389-90 (concluding that the transmission of settlement recommendations to a law firm's client in the forum state by way of telephone and mail alone would be insufficient to conclude that the defendants committed malpractice in the forum state). Because the only remaining connection to Massachusetts is the emotional distress the Plaintiff has allegedly suffered, see A Corp., 812 F.3d at 60 (finding the relatedness prong was not satisfied where the only connection to the forum state was the injury resulting from lost business therein), the nexus is insufficient to satisfy the relatedness prong.

Even if it could be shown that the Plaintiff's claims were founded directly upon the Defendants' activities in Massachusetts, this Court still lacks specific jurisdiction because the Defendants have not purposefully availed themselves of the privilege of conducting activity in the forum state. See A Corp., 812 F.3d at 60 ("The purposeful availment inquiry is intended to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state.") (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)) (internal quotation marks and citation omitted). Under this prong, courts "focus on the defendant's intentionality, and the cornerstones of purposeful availment -- voluntariness and foreseeability." A Corp., 812 F.3d at 60 (citation omitted). "The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 571 U.S. 277, 290 (2014). Under this approach, the question is whether the defendant at least "aimed" its challenged conduct at the forum State. Calder v. Jones, 465 U.S. 783, 789 (1984). The facts as alleged are insufficient to show that the Defendants expressly aimed or directed their conduct to

Massachusetts when they responded to the Plaintiff's inquiries regarding the process by which he could resolve the pending Conduct Code Charge.[5]

## II. IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS THE DEFAMATION CLAIM PURSUANT TO RULE 12(b)(6) AND TRANSFER THIS CASE TO THE DISTRICT OF NEW HAMPSHIRE PURSUANT TO 28 U.S.C. § 1404(a)

If this Court determines that it may exercise personal jurisdiction over the Defendants, the Defendants move to dismiss the defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6), as the Plaintiff has failed, *inter alia*, to allege that the statements published by the Defendants were false. In addition, the Defendants move this Court to transfer this case to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a), as such a transfer would serve the interest of justice in that the operative facts occurred in New Hampshire and have no material connection to Massachusetts.

### A. The Plaintiff Failed to Allege Facts Sufficient to Support a Finding of Defamation

"To establish a defamation claim under Massachusetts law, four elements are required: (1) that the defendant made a statement, concerning the plaintiff, to a third party; (2) that the

---

[5] In Hahn v. Vermont Law School, 698 F.2d 48 (1983), the First Circuit held that specific jurisdiction could be exercised over Vermont Law School on breach of contract claims pursuant to the Massachusetts' long-arm statute, M.G.L. ch. 233, § 3, because the facts showed that Vermont Law School had mailed the plaintiff's application and acceptance letter to Massachusetts, which were instrumental in the formation of the contract. Id. at 51. In addition, the Hahn Court also concluded that, while it a "close question" whether the sending of the application and acceptance letter to Massachusetts alone could satisfy the requirements of due process, the court concluded that Vermont Law School's activities with respect to the plaintiff "were not simply isolated occurrences; instead; they were part of [Vermont Law School's] efforts to serve the market for legal education in Massachusetts." Id. at 52 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Unlike in Hahn, however, the act of sending the letters to Massachusetts was an isolated occurrence which is unrelated to any other efforts on the part of UNH Law to serve, directly or indirectly, the market for legal education in Massachusetts. See Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 112 (1987) (holding that specific jurisdiction may lie over a foreign defendant that places a product into the "stream of commerce" while also "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice in the forum State, or marketing the product through a distributor who has agreed as the sales agent in the forum State," because the plaintiff's claim directly concerned the product placed in the stream of commerce). Furthermore, it is not clear that Hahn v. Vermont Law School remains good law considering the substantial development in the application of specific and general jurisdiction since 1983, as discussed herein.

statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss." Lemelson v. Bloomberg LP, 253 F. Supp. 3d 333, 338-39 (D. Mass. 2017) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508. 510-11 (Mass. 2003)) (internal quotation marks and brackets omitted). "In most cases, a statement must be false, and truth will constitute a defense." Alharbi v. TheBlaze, Inc., 199 F. Supp. 3d 334, 351 (D. Mass. 2016) (citation omitted). However, Massachusetts "allows a plaintiff to recover for a truthful defamatory statement published in writing (or its equivalent) with actual malice." Ravnikar, 782 N.E.2d at 510, n. 3) (citing M.G.L. ch. 231, § 92 ("The defendant in an action for writing or for publishing a libel may introduce in evidence the truth of the matter contained in the publication charged as libelous; and the truth shall be a justification unless actual malice is proved") (emphasis added)). As such, when a defamatory statement is truthful, a plaintiff can recover if he or she can show that the statement was made with actual malice. Sensing v. Outback Steakhouse of Fla., Inc., 566 F. Supp. 2d 24, 27, n. 1 (D. Mass. 2008) (citation omitted), rev'd on other grounds, 575 F.3d 145 (1st Cir. 2009)). In this context "actual malice" means "ill will" or "malevolent intent." Noonan v. Staple, Inc., 556 F.3d 20, 29 (1st Cir. 2009) (applying Massachusetts' law and finding that the definition of "actual malice," as used in M.G.L. ch. 231, § 92, is separate and distinct from the actual malice standard as first set forth in New York Times Co. v. Sullivan, 376 U.S. 254 (1964)); see also Scheman v. Hopkinton Basketball Ass'n, No. MICV2011-04166, 2012 Mass. Super. LEXIS 175, at *13, n. 3 (Mass. Super. Ct. July 17, 2012) (following Noonan).

In making his claim of defamation against the Defendants, the Plaintiff claims that the Defendants defamed him by doing the following:

      i. "Failing to provide the most fundamental requisite of due process law, an opportunity to be heard;

     ii. Depriving the Plaintiff the liberty interest in continuing his legal studies at Suffolk Law, through the omission of any opportunity to be heard prior to submitting a letter of the Plaintiff's current standing at UNH Law;

    iii. Depriving the Plaintiff the liberty interest in continuing his legal studies at New England Law, through the omission of any opportunity to be heard prior to submitting a letter of the Plaintiff's current standing at UNH Law; and,

    iv. Depriving the Plaintiff of a letter of good standing and therefore his good name, reputation, honor, and integrity, without first allowing any opportunity to be heard."

See Complaint at p. 7, ¶¶ j-m. In support of these claims, the Plaintiff specifically alleged that Ms. Canning offered to produce a letter stating that the Plaintiff is ineligible to return until the pending Conduct Code Charge pending is resolved. Id. at ¶ 3. After the Plaintiff elected this option, Ms. Canning produced and submitted to Suffolk University Law School and New England Law a letter of the Plaintiff's current standing with UNH Law. Id. at ¶¶ 5-9, 20-23.

What the Complaint does not contain, however, are factual allegations which could form the basis for a conclusion that (1) the statements made in the letters submitted to Suffolk School of Law and New England Law were false, or (2) that the Defendants made the statements in the letters with actual malice. Critically, the Plaintiff does not make any allegation that the contents of the letters – that the Plaintiff is not in good standing with UNH Law and is ineligible to return until the pending Conduct Code Charge is resolved – are disputed. See Lemelson v. Bloomberg LP, 253 F. Supp. 3d 333, 339 (D. Mass. 2017) (noting that an article disclosing that the plaintiff was subject to an investigation was defamatory because it was disputed that the plaintiff was under investigation). Where a statement does not accuse the plaintiff of having committed a disputed fact, a statement generally cannot be defamatory. See Foley v. Lowell Sun Pub. Co., 533 N.E.2d 196, 197 (Mass. 1989) (affirming the grant of summary judgment where the

defendant published an article stating that the plaintiff had been arrested for assaulting a police officer, which was undisputed). As such, because the Plaintiff has not alleged any facts showing that the Defendants published the letters with "ill will" or "malevolent intent," the Plaintiff's defamation claim must be dismissed. Cf. Scheman, 2012 Mass. Super. LEXIS at *13-*17 (declining to grant defendants' motion to dismiss after finding, *inter alia*, that actual malice could be inferred from allegations that youth sports association board members treated the plaintiff with hostility and contempt during a meeting the day before sending a truthful statement to team parents that the plaintiff would be removed as a coach).

B. **The District of New Hampshire is the Appropriate Venue for this Case**

Finally, if this Court determines that it can exercise personal jurisdiction over the Defendants, the Defendants move to have this case transferred to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that this Court may transfer a civil action to any federal district where the case might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). When considering a motion under Section 1404(a), courts must weigh private interest and public interest factors. Bowen v. eLanes N.H. Holdings, LLC, 166 F. Supp. 3d 104, 107 (D. Mass. 2015). "Private interest factors include the statutory considerations of convenience of the parties and witnesses . . . but also the relative ease of access to sources of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment and any practical problems that make trial of a case easy, expeditious and inexpensive." Id. (internal quotation marks and citations omitted). "Public interest factors include the statutory consideration of the interest of justice, . . . but also the practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that

has no relation to their community, and the familiarity with the court with applicable laws." Id. at 107-08 (internal quotation marks and citations omitted).

When moving to transfer under Section 1404(a), the moving party has the burden to show that "an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum." Iragorri v. International Elevator Inc., 203 F.3d 8, 12 (1st Cir. 2000). Generally, there is a presumption in favor of the plaintiff's choice of forum. Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 52 (1st Cir. 1990). However, "'where the operative facts of the case have no material connection with [the venue], plaintiff's choice of forum carries less weight.'" United States ex rel. Onis v. City of Woonsocket, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (quoting Goodman v. Schmalz¸ 80 F.R.D. 296, 302 (E.D.N.Y. 1978)) (internal brackets omitted). Moreover, "the convenience of witnesses is '[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under [28 U.S.C. § 1404(a)].'" United States ex rel. Onis, 480 F. Supp. 2d at 437 (quoting 15 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3848 (3d ed. 2007)).

Here, the Plaintiff's choice of venue should be afforded little weight as Massachusetts has little connection to the operative facts of this case. The Plaintiff's claims all relate to what he has asserted was a denial of due process, in that the Defendants have allegedly denied the Plaintiff the opportunity to be heard. See Complaint at pp. 7-8, ¶¶ a-aa. In support of these claims, the Plaintiff has alleged facts that show that all of the communications relating to his efforts to resolve the pending Conduct Code Charge resulted from his contacts to the Defendants in New Hampshire, where the parties discussed the manner in which the pending Conduct Code Charge could be resolved and the letters were drafted. The only facts alleged which show a connection

with Massachusetts are the two incidents of mailing the letters to Suffolk University School of Law and New England Law.  Absent more, whatever ties Massachusetts may have to this case based upon the mailing of the letters is clearly ancillary to the New Hampshire connections at stake.  See Thermo Niton Analyzers, LLC. V. Morningsight Capital, LLC, No. 10-cv-10374, 2010 U.S. Dist. LEXIS 72524, at *6 (D. Mass. July 16, 2010) (transferring a case to New York where the only connection with Massachusetts' was a choice of law provision with regards to an agreement which was negotiated, executed, and predominantly performed in New York).

In addition, consideration of the private interest factors support transfer to New Hampshire.  Principally, the majority of the fact witnesses in this case are located in New Hampshire.  See Bowen, 166 F. Supp. 3d at 109 (noting that "courts look at the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify" when considering private factors).  As such, in the event that this case went to trial and out-of-state witnesses are unwilling to testify, the District of New Hampshire would be better equipped to compel them to do so.  See id. (discounting the ability to obtain affidavits and transfer subpoenas between districts in considering the convenience of witnesses).  Likewise, nearly all of the evidence is in New Hampshire.  See id. (weighing the location of documents in favor of transfer despite noting that technological advances have undercut the importance of the physical location of documents in litigation).  Similarly, consideration of public interest factors also supports transfer to New Hampshire.  As this case concerns USNH, a New Hampshire body politic and the largest provider of postsecondary education in New Hampshire, and the facts which lie at the heart of the Complaint occurred in New Hampshire, New Hampshire has a "clear interest in trying and resolving the case in a local forum, and fairness suggest that jury duty should fall on [its]

citizens." Atari v. UPS, 211 F. Supp. 2d 360, 365 (D. Mass. 2002) (noting that the incident at the heart of the plaintiff's action occurred in New Jersey, and that New Jersey had a greater interest in resolving the dispute despite the fact that the plaintiff was a Massachusetts' resident).

## CONCLUSION

For the reasons explained herein, the Defendants respectfully request that this Honorable Court dismiss the Complaint in its entirety for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, the Defendants request that this Court dismiss the defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and transfer this case to the District of New Hampshire pursuant to 28 U.S.C. § 1406(a).

Respectfully submitted,

UNIVERSITY SYSTEM OF
NEW HAMPSHIRE and
FRANCES CANNING

By their attorneys,

DEVINE, MILLIMET, & BRANCH
PROFESSIONAL ASSOCIATION

Dated: October 30, 2018          By: /s/ Christopher Hawkins
                                 Christopher Hawkins, Esq. (Bar No. 568797)
                                 111 Amherst Street
                                 Manchester, NH 03101
                                 (603) 669-1000
                                 chawkins@devinemillimet.com

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served this day, via electronic transmission in accordance with the ECF filing procedures.

Dated: October 30, 2018          /s/ Christopher Hawkins
                                 Christopher Hawkins, Esq.