# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOEL MATEO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 18-11953-FDS |
| ) | |
| UNIVERSITY SYSTEM of NEW HAMPSHIRE ) | |
| and FRANCES CANNING, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is an action arising out of plaintiff Joel Mateo's withdrawal from the University of New Hampshire School of Law ("UNH Law") while under investigation for violating the school's code of conduct. Two years after withdrawing, Mateo was unable to obtain transfer admission to other law schools, apparently in part due to the unresolved conduct issue. He was also denied readmission to UNH Law.

Matteo is proceeding *pro se*. The complaint alleges a claim for denial of due process under the Fourteenth Amendment, which the Court will interpret as a claim under 42 U.S.C. § 1983. More specifically, it alleges that defendants failed to provide Mateo an opportunity to be heard and deprived him of his liberty interest in pursuing a legal education and career. The complaint also alleges common-law claims for defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, defendants have moved to dismiss the common-law defamation claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and request a transfer of venue to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a).

For the following reasons, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction will be denied; the motion to dismiss the defamation claim will be granted; and the request for a transfer of venue to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a) will also be granted.

I. **Background**

   A. **Factual Background**

Unless otherwise noted, the following facts are undisputed or presented as stated in the complaint.

The University System of New Hampshire ("UNH") is a body politic established pursuant to New Hampshire law with an address of 5 Chenell Drive, Suite 301, Concord, New Hampshire. (Defs.' Mot. to Dismiss Ex. A (Provencher Decl.) ¶ 2). UNH Law, also located in Concord, is a component institution of UNH. (*Id.* ¶ 3). Neither UNH Law nor UNH have campuses in Massachusetts. (*Id.* ¶ 4). UNH currently employs thirteen individuals in Massachusetts: five researchers and eight adjunct professors who teach online courses. (*Id.* ¶¶ 5-6).

Frances Canning is the Assistant Dean of Students at UNH Law. (Compl. ¶ 2). She is, and was at all relevant times, a resident of New Hampshire. (Defs.' Mot. to Dismiss Ex. B (Canning Decl.) ¶ 1). She does not own any property in Massachusetts. (*Id.* ¶ 2).

Joel Mateo is currently a resident of Massachusetts. (Compl. at 1). In the fall of 2015,

Mateo was a student at UNH Law.  On November 5, 2015, he withdrew from UNH Law while under investigation for violating the school's conduct code.  (*Id.* ¶ 1).  The nature of the alleged violation is not set forth in the record.

On May 5, 2017, Mateo sent an e-mail to Canning in order to acquire a letter of good standing for use in transfer applications to other law schools.  (*Id.* ¶ 2).  She responded, giving him two options.  (*Id.* ¶ 3).  He could seek to have the school resolve the conduct-code issue, after which it would issue a letter based on its findings.  (*Id.*).  Alternatively, she could write a letter of current standing, stating that he was ineligible to return to UNH Law until the pending conduct-code charge was resolved, and he could submit that letter, along with his own response, to any prospective law schools.  (*Id.*).  He ultimately elected to proceed with the second option.  (*Id.* ¶ 5).

On May 24, 2017, Canning produced the requested letter of current standing.  (*Id.* ¶ 7).  On June 30, 2017, Mateo applied to Suffolk University Law School in Boston.  (*Id.* ¶ 8).  On July 13, 2017, Canning submitted the letter of current standing to Suffolk.  (*Id.* ¶ 9).  On July 27, 2017, Mateo was denied admission to Suffolk.  (*Id.* ¶ 10).

On August 7, 2017, Mateo informed Canning that he now wished to pursue the first option—resolution of the pending conduct-code charge.  (*Id.* ¶ 11).  Canning responded by informing Mateo that he would have to re-enroll in the UNH Law program in order to trigger that resolution process.  (*Id.* ¶ 12).  On January 16, 2018, Mateo confirmed his desire to reenroll.  (*Id.* ¶ 16).  However, because it had been more than two years since he had withdrawn from school, the school informed him that he would have to reapply with advance standing in order to re-enroll.  (*Id.* ¶ 17).

On March 19, 2018, Mateo submitted his application to UNH Law.  (*Id.* ¶ 18).  His

application for admission was ultimately denied. (*Id.* ¶ 19). He then applied to New England Law School in Boston. (*Id.* ¶ 20). UNH Law submitted the same letter of current standing to New England Law upon his request. (*Id.* ¶¶ 21-22). That application for admission was also denied. (*Id.* ¶ 23).

### B. Procedural Background

Mateo filed the complaint in this action on September 14, 2018. The complaint alleges claims for violation of 42 U.S.C. § 1983; defamation; negligent infliction of emotional distress; and intentional infliction of emotional distress. Defendants have moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. In the alternative, defendants have moved to dismiss the defamation claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and have requested a transfer of the action to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a).

## II. Personal Jurisdiction

### A. Legal Standard

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendants. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). In considering a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried that burden: the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard. *See id.* at 50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995). Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the *prima facie* standard is applied. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under that standard, the court takes the plaintiff's "properly

documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). A plaintiff may not "rely on unsupported allegations in [its] pleadings." *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir. 2006)). "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Foster-Miller*, 46 F.3d at 145). Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)).

To establish personal jurisdiction, plaintiff must show that the requirements of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, are satisfied, and that the exercise of jurisdiction is consistent with constitutional due process. *Daynard,* 290 F.3d at 52; *Intech, Inc. v. Triple "C" Marine Salvage, Inc.,* 444 Mass. 122, 125 (2005). Due process requires that a plaintiff alleging specific personal jurisdiction establish the existence of three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530 F.3d at 27 (alterations omitted)).

### B. <u>Analysis</u>

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the

5

Due Process Clause." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Because the "modest differences" between the two are immaterial here, this analysis will begin directly with the constitutional test. *Id.*

The Supreme Court has defined two categories of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). As applied to corporations, general jurisdiction reaches "causes of action arising from dealings entirely distinct from" a foreign corporation's in-state contacts. *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).

Specific jurisdiction is limited to claims that "aris[e] out of or [are] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Over the years, the Supreme Court "has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' i.e., specific jurisdiction, [and] general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler*, 134 S. Ct. at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

1. **General Jurisdiction**

"A court may assert general jurisdiction over foreign [state] corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop*, 564 U.S. at 919. To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler*, 134 S. Ct. at 758 n.11. The Supreme Court has indicated that such jurisdiction will exist only in the

6

"exceptional case." *See id.* at 761 n.19.

Beyond question, a Massachusetts court may not assert general jurisdiction over Canning. She is a New Hampshire resident who is not employed, and does not own any property, in Massachusetts.

It is also clear that a Massachusetts court may not assert general jurisdiction over UNH. Mateo has pointed to six contacts that UNH has with Massachusetts. For the reasons discussed below, those contacts are not sufficiently "continuous and systematic" such that they render UNH "at home" in Massachusetts.

UNH is a state university, organized pursuant to New Hampshire law and located entirely in New Hampshire. It employs a mere 13 employees in Massachusetts. Although it receives an accreditation from a Massachusetts-based nonprofit organization, and grants academic credits to students who complete internships in Boston, it does not maintain any campuses in Massachusetts. *See Bulwer v. Massachusetts Coll. of Pharmacy & Health Scis.*, 2014 WL 3818689, at *5-6 (D.N.H. Aug. 4, 2014) (concluding the presence of defendant college's satellite campus in the forum state was insufficient to render it "at home" where only 6% of students took courses at the satellite campus).

UNH's high-school recruitment efforts, reduced-tuition program, and annual executive networking forum are all conducted at least to some degree in Massachusetts. But such contacts are insufficient to establish general jurisdiction. Numerous federal courts have declined to find higher-education institutions "at home" merely because they advertised in, recruited students from, and maintained contacts with alumni in the forum state. *See, e.g.*, *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985); *Corrales Martin v. Clemson Univ.*, 2007 WL 4531028, at *5-6 (E.D. Pa. Dec. 20, 2007); *Chira v. Columbia Univ. in the City of New*

*York*, 2005 WL 8156561, at *6 (C.D. Cal. May 3, 2005); *Scherer v. Curators of Univ. of Missouri & Law Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282-83 (D. Kan. 2001) (collecting cases). Such interstate contacts, which are typical of nationally prominent universities, are not sufficient to render a university "at home" in foreign jurisdictions. *See, e.g., Gallant v. Trustees of Columbia Univ. in City of New York*, 111 F. Supp. 2d 638, 641 (E.D. Pa. 2000).

In short, UNH's activities in Massachusetts cannot be characterized as so "continuous and systematic" that UNH must be deemed "at home" in Massachusetts. Accordingly, there are no grounds for general jurisdiction.

### 2. **Specific Jurisdiction**

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). That nexus requires three things: (1) "the plaintiff's claim must be related to the defendant's contacts" with the state; (2) "the defendant's contacts with the state must be purposeful"; and (3) "the exercise of jurisdiction must be reasonable under the circumstances." *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). All three requirements must be met, but a strong showing of reasonableness can fortify a more marginal showing of relatedness and purposefulness. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

#### a. **Relatedness**

"Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) (citing

8

*United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) ("[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case.")). "When alleged contacts fall short of being 'continuous and systematic' so that the exercise of general jurisdiction would be unfair, those contacts may still support the exercise of specific jurisdiction if they are related to the cause of action." *Swiss Am. Bank*, 274 F.3d at 623. The requirement of relatedness "ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with the forum that is wholly unrelated to the suit at issue." *Id.*

For tort claims, the relatedness inquiry "focuses on whether the defendant's *in-forum* conduct caused the injury or gave rise to the cause of action." *Id.* at 622. Here, in substance, the complaint alleges that Mateo was harmed by defendants' wrongful actions that deprived him of his liberty interest in pursuing a legal education without an opportunity to be heard, defamed him, and consequently caused him emotional distress. (Compl. at 7-8). With respect to the due-process claim, it appears that all of the allegedly wrongful actions occurred in New Hampshire. New Hampshire was where defendants declined to provide him with a letter of good standing, produced the requested letter of current standing, required him to reapply to UNH Law in order to address the conduct-code charge, and ultimately denied his application, all allegedly without due process. Defendants' conduct in Massachusetts, therefore, has only a limited connection to his § 1983 claim.

However, defendants' conduct in Massachusetts has a more direct connection to Mateo's state-law defamation claim. Defendants sent the two allegedly defamatory letters of current standing to Massachusetts law schools, and it was in Massachusetts that the allegedly defamatory letters harmed Mateo. At the jurisdictional-analysis stage, the issue is not whether the

9

defamation claim has any actual merit, only where the impact of the allegedly wrongful conduct would occur. Under the circumstances, the sending of the two letters is sufficient to satisfy the relatedness prong.[1]

### b. **Purposeful Availment**

The purposeful-availment inquiry "focuses on the defendant's intentionality." *Swiss Am. Bank*, 274 F.3d at 623. The exercise of personal jurisdiction is only proper when a defendant "purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on th[o]se contacts." *Id.* at 624. Where, as here, the claim asserted does not arise out of the defendant's physical presence in the forum state, the court must "look for some other indication that the defendant reached into the forum, such as mail or telephone contacts." *Id.* at 622.

Mateo contends that UNH purposefully directed it activities toward Massachusetts "through its expansive and pervasive operation as an institution of higher education." (Pl.'s Opp. at 14). He further contends that UNH "derives substantial benefits from services offered and provided within Massachusetts" and is "dependent on the State [sic] of Massachusetts for deriving the value of its services; for its customer base; for [its] services offered within the City of Boston, and for access to the Commonwealth's business community and exposure." (*Id.* at 14-15). However, such interstate contacts, which again are typical of prominent universities, are not alone sufficient to satisfy the purposeful availment prong. *See, e.g., Gallant*, 111 F. Supp. 2d at 641. Therefore, with respect to Mateo's § 1983 claim, his contentions that defendants "deliberately established continuous and systematic contacts with Massachusetts" are insufficient

---

[1] The claims for negligent and intentional infliction of emotional distress are entirely derivative of the other claims; the alleged distress is claimed to have been caused by the deprivation of plaintiff's constitutional rights and the defamatory letters. Accordingly, no separate analysis is required as to those claims.

10

to find that defendants intentionally reached into the state, such that jurisdiction in Massachusetts would have been foreseeable. (Pl.'s Opp. at 15).

With respect to Mateo's state-law defamation claim, however, whether defendants' contacts with Massachusetts are sufficient presents a closer call. On the one hand, it is true that in defamation cases, there is purposeful availment where a defendant "inten[ded] to cause injury in the forum by aiming their [defamatory publication] at a forum resident and then publishing [it] there, knowing that the injury would be felt in the forum." *Swiss Am. Bank*, 274 F.3d at 624 (describing the so-called "effects test" employed in *Calder v. Jones*, 465 U.S. 783, 789 (1984)). In such cases, "the in-forum publication and the in-forum injury [are] clearly related to the plaintiff's defamation suit." *Id.* On the other hand, it is equally true that a plaintiff's "unilateral activity," and a defendant's actions taken in response to such activity, cannot establish purposeful availment. *Prep Tours, Inc. v. American Youth Soccer Org.*, 2019 WL 126221, at *6, *10, *13 (1st Cir. Jan. 8, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). Here, defendants sent two allegedly defamatory letters of current standing to Massachusetts law schools, allegedly knowing the injury to Mateo would be felt in Massachusetts. But those letters were only sent at Mateo's request—that is, in response to his unilateral action.

Thus, and while there is significant doubt as to the issue, there may be a sufficient basis to find that defendants intentionally reached into the state, such that the exercise of personal jurisdiction in Massachusetts would have been foreseeable with respect to his defamation claim. The resolution of that issue is ultimately irrelevant, however, because, as discussed below, the defamation claim fails as a matter of law, and will therefore be dismissed.

### c. Reasonableness

The exercise of personal jurisdiction must be reasonable and fundamentally fair. *See Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). To determine reasonableness, the First Circuit considers what it calls "the gestalt factors": (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Nowak*, 94 F.3d at 717. These factors are "not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice." *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

As to the first factor, although it would be somewhat burdensome for defendants to appear before this court, it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak*, 94 F.3d at 718. For this factor to have any significance, the defendant must demonstrate that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Pritzker*, 42 F.3d at 64. Defendants here are located in neighboring New Hampshire. There is no evidence that defendants' burden of litigating in this forum is any greater than the burden for a typical foreign defendant. Thus, this factor favors a finding of reasonableness.

The second factor is the forum state's interest in adjudicating the dispute. Massachusetts has some interest in adjudicating this dispute because it has an interest in protecting its citizens from defamatory statements and otherwise wrongful conduct. But that interest is relatively modest where the relevant conduct occurred almost entirely in New Hampshire, not Massachusetts, and where the defendant is a New Hampshire entity, largely funded by the state

12

and organized under its laws.

The third factor favors a finding of reasonableness. Deference is owed to a plaintiff's choice of forum, and Mateo has elected to file suit in his home state. *Id*.

The fourth factor, the interests of the judicial system, is inconclusive. Courts are instructed to focus on the judiciary's "interest in obtaining the most effective resolution of the controversy." *Id.* at 63. Nothing at all suggests that judicial economy would be best served by litigating this dispute in Massachusetts. Because the bulk of defendants' allegedly wrongful conduct occurred in New Hampshire, New Hampshire law would likely apply to the common-law claims. Presumably, virtually all of the witnesses and relevant documents are in New Hampshire. Nor does it appear that the New Hampshire courts are ill-equipped to provide a remedy for Mateo's claims.

Finally, the fifth factor, the common interests of all sovereigns in promoting substantive social policies, is likewise inconclusive.

Considered as a whole, the exercise of personal jurisdiction over defendants, at least as to the defamation claim, is reasonable. Although this is essentially a dispute about the treatment of Mateo by the New Hampshire state university at which he was enrolled, Mateo was allegedly defamed in Massachusetts by letters that defendants sent into the forum, knowing their effects would be felt there. With respect to these two letters, the contacts of UNH with Massachusetts are directly related to the defamation claim asserted.

Under the circumstances, there are minimum contacts with the state such that the exercise of jurisdiction accords with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. The Court therefore may exercise personal jurisdiction over defendants for the purpose of adjudicating the § 1983 and state-law claims.

## III. Rule 12(b)(6) Motion to Dismiss the Defamation Claim

Defendants have also moved to dismiss the common-law defamation claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and requested transfer of venue to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a).

To establish a defamation claim under Massachusetts law, a plaintiff must show (1) that the defendant made a statement concerning the plaintiff to a third party; (2) that the statement could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss or is actionable without proof of economic loss. *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citing *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30 (2003)). "Truth is an absolute defense to a defamation action under Massachusetts law." *Mondol v. City of Somerville*, 2017 WL 4845019, at *12 (D. Mass. Oct. 26, 2017), *aff'd sub nom. Mondol v. City of Somervile*, 2018 WL 4000901 (1st Cir. Aug. 20, 2018) (quoting *Massachusetts Sch. of Law*, 142 F.3d at 42). "Massachusetts law recognizes a narrow exception to this defense: the truth or falsity of an allegedly defamatory statement is immaterial, and a libel action may proceed, if the plaintiff can show that the defendant acted with 'actual malice' in publishing the statement." *Mondol*, 2017 WL 4845019, at *12 n.9 (citing *Noonan v. Staples, Inc.*, 556 F.3d 20, 26 (1st Cir. 2009); Mass. Gen. Laws ch. 231, § 92). The term "actual malice," as it is used in Mass. Gen. Laws. ch. 231, § 92, means "actual malevolent intent or ill will." *Noonan*, 556 F.3d at 28-30.

Here, the complaint alleges that defendants defamed Mateo by

> [f]ailing to provide the most fundamental requisite of due process of law, an opportunity to be heard; [d]epriving the Plaintiff the liberty interest in continuing his legal studies at Suffolk Law, through the omission of any opportunity to be heard prior to submitting a letter of the Plaintiff's current standing at UNH Law; [d]epriving the Plaintiff the liberty interest in continuing his legal studies at New England Law, through the omission of any opportunity to be heard prior to

14

> submitting a letter of the Plaintiff's current standing at UNH Law; and,
> [d]epriving the Plaintiff of a letter of good standing and therefore his good name, reputation, honor, and integrity, without first allowing any opportunity to be heard.

(Compl. at ¶¶ j-m). The first three of these allegations have nothing to do with the claim for defamation. Rather, they allege deprivations of due process and liberty interests relevant, if at all, to the § 1983 and emotional-distress claims. The fourth allegation— that defendants "[d]epriv[ed] the Plaintiff of a letter of good standing and therefore his good name, reputation, honor, and integrity, without first allowing any opportunity to be heard"—sounds more in defamation. Fatally, however, there are no allegations that the letters defendants sent to Massachusetts law schools were false, much less that they were sent with ill will or malevolent intent. Although Mateo disputes the validity of the underlying conduct-code charge and resulting disciplinary actions at UNH Law, he does not allege that the letters of current standing—which simply stated that he was ineligible to return to UNH Law until the pending conduct-code charge was resolved—were inaccurate descriptions of his current standing at the school.

Because the complaint fails to allege that defendants published statements about Mateo that were false (or that they were true but sent with actual malice), the defamation claim must fail, and will therefore be dismissed.

### IV. Transfer of Venue under 28 U.S.C. § 1404(a)

#### A. Legal Standard

Defendants further seek transfer of venue to the District of New Hampshire pursuant to 28 U.S.C. § 1404(a). That statute provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) codifies in part the

doctrine of *forum non conveniens*. *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir. 1999). The decision of whether to transfer a case rests with the sound discretion of the court. *Filmline (Cross-Country) Prod., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).

### 1. Whether New Hampshire Is a Proper Venue

Before proceeding to an "individualized, case-by-case consideration of convenience and fairness," the explicit terms of the statute require the initial determination of whether this action could have properly been brought in the proposed transferee court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). Venue clearly would have been appropriate in the District of New Hampshire. Nearly all of the events giving rise to the remaining claims occurred in that district. Mateo was formerly a law student at UNH Law in New Hampshire. Presumably, he was a New Hampshire resident at the time he attended the school. It was in New Hampshire that defendants declined to provide him with a letter of good standing, produced the requested letter of current standing, required him to reapply to UNH Law in order to address the conduct-code charge, and ultimately denied his application, all allegedly without due process. Therefore, this action could have been properly brought in the District of New Hampshire in the first instance.

### 2. Whether the Balance of Convenience and Fairness Weighs in Favor of a Venue Transfer

The decision to transfer a case pursuant to § 1404(a) is a matter within the discretion of the district court. *Stewart Org.*, 487 U.S. at 29; *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). "The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Where the forum has no material connection to the case, a plaintiff's choice of forum should be given less

weight. *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (quoting Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 3d § 3848 at 134-39 (2007)).

As a threshold matter, the center of gravity in this case is clearly in New Hampshire. The core claim is that UNH did not provide Mateo with due process as to his alleged code-of-conduct violation; the defamation claim has been dismissed, and the emotional-distress claims are, at best, derivative of the other claims. Put another way, if Mateo actually violated the code of conduct, or was treated fairly by UNH, it is difficult to see how the emotional-distress claims survive. Although Mateo apparently now resides in Massachusetts, the underlying conduct and the resulting disciplinary actions all occurred while he was a student in New Hampshire. Furthermore, the refusal of UNH to readmit him likewise occurred in New Hampshire. His subsequent move to Massachusetts is of course relevant to the analysis, but is not dispositive.

The convenience of expected witnesses is "probably the most important factor, and the factor most frequently mentioned" in any analysis under § 1404(a*). Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citations omitted). Here, the convenience of potential witnesses justifies transfer of this action to New Hampshire. As defendants note, there are "[n]umerous witnesses with information concerning the circumstances leading up to [Mateo's] interim suspension and ultimate withdrawal from UNH Law [who] will need to be deposed and ultimately called to trial." (Defs.' Reply at 11). Many of those witnesses are not employees of UNH.

It is true that Mateo has identified some potential witnesses who are located in Massachusetts: the members of the admissions offices at the two Massachusetts law schools; medical professionals, who presumably will testify to the emotional distress Mateo suffered; and

17

"character witnesses." Without the defamation claim, however, the Massachusetts admissions officers are no longer witnesses, as they would have no knowledge of the underlying events surrounding the conduct-code issue that occurred at UNH Law, nor would they have any knowledge of the emotional distress Mateo alleges he suffered as a result of defendants' actions. That leaves Mateo's character witnesses, who are presumably friendly to Mateo and whose appearance he is likely able to secure without a subpoena from the New Hampshire court, and medical witnesses, whose presence in Massachusetts is due to the fact that he now lives in the state and secured medical attention here. On balance, the convenience of witnesses justifies transfer of this action to New Hampshire.

Finally, the federal court of New Hampshire is of course fully capable of deciding the issues presented in this case. Because this is essentially a dispute about the treatment of a student by the New Hampshire state university at which he was enrolled, whether defendants' actions were wrongful will likely turn in large part on the application of New Hampshire law to events that occurred almost entirely in New Hampshire. Obviously, the New Hampshire court is capable of applying New Hampshire law.

Accordingly, and despite the strong presumption in favor of Mateo's choice of forum, defendants have met their burden of demonstrating that New Hampshire is a significantly more convenient forum. Therefore, this Court will grant the motion to transfer.

## V. Conclusion

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is DENIED. Defendants' motion in the alternative to dismiss the defamation claim pursuant Fed. R. Civ. P. 12(b)(6) is GRANTED. Defendants' motion to transfer the claims under 42 U.S.C. § 1983 and for infliction of emotional distress to the District of New Hampshire pursuant to 28

U.S.C. § 1404(a) is GRANTED.

**So Ordered.**

Dated: January 14, 2019

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge