## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Joel Mateo**

                                            Case No. 19-cv-70-PB

    v.                                   Opinion No. 2020 DNH 126

**University System of New Hampshire and**
**Frances Canning**

### MEMORANDUM AND ORDER

Joel Mateo is a former student of the University of New Hampshire School of Law ("UNH Law"). While there, he was involved in an alleged on-campus theft, which, if true, is a violation of UNH Law's Conduct Code. Rather than confront the potential violation immediately, Mateo took a leave of absence. He then waited more than a year before he made a sustained effort to return to school to face the charge. By that point, school policy required him to apply again and be readmitted before he could have a hearing on the Conduct Code violation. Mateo followed this path and applied for readmission but UNH Law refused his request. As a result, it also refused to hold a hearing on the Conduct Code violation.

Mateo argues in the current action that the University System of New Hampshire ("USNH") and Frances Canning, the former Assistant Dean of Students at UNH Law, violated his right to procedural due process by failing to accommodate his request for

a hearing on the Conduct Code violation. He also presses claims for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), negligence, and breach of contract. Defendants have moved for summary judgment on all of Mateo's claims. For the following reasons, I grant defendants' motion.

## I.   <u>**STANDARD OF REVIEW**</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit under the applicable law." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (internal quotation marks omitted). A "genuine dispute" exists if a jury could resolve the disputed fact in the nonmovant's favor. Ellis v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018) (quoting Cherkaoui, 877 F.3d at 23–24).

The movant bears the initial burden of presenting evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); <u>accord</u> Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016). Once the movant has properly presented such evidence, the burden shifts to the nonmoving party to "designate

specific facts showing that there is a genuine issue for trial,"
Celotex, 477 U.S. at 324 (internal quotation marks omitted), and
to "demonstrate that a trier of fact could reasonably resolve
that issue in its favor," Flovac, 817 F.3d at 853 (brackets
omitted) (internal quotation marks omitted). If the nonmovant
fails to adduce such evidence, the motion must be granted. See
id. In considering the evidence presented by either party, all
reasonable inferences are to be drawn in the nonmoving party's
favor. See Theriault v. Genesis HealthCare LLC, 890 F.3d 342,
348 (1st Cir. 2018).

## II.   BACKGROUND

### A.   Factual Background

Mateo began his studies at UNH Law in the fall of 2014.
Decl. of Fran Canning ("Canning Decl."), Ex. 1 to Defs.' Mot.
for Summ. J. ("Defs.' Mot."), Doc. No. 57-2 at 1. Upon
enrolling, Mateo received a copy of the 2014-15 UNH Law Student
Handbook and received a copy of the 2015-16 version in the fall
of 2015.[1] Decl. of Joel Mateo ("Mateo Decl."), Ex. 5 to Pl.'s

---

[1] Mateo's initial complaint referred to provisions of the UNH
Student Handbook rather than the UNH Law Student Handbook.
Defendants point out in their motion for summary judgment that
the UNH Student Handbook applies to undergraduate and graduate
students at UNH's campus in Durham, New Hampshire, whereas the
UNH Law Student Handbook applies to those students who are
enrolled at UNH Law in Concord, New Hampshire. Mateo's objection
makes no attempt to refute defendants' argument and extensively
references the UNH Law Student Handbook. I construe Mateo's

Obj. at 1.[2]

UNH Law's Conduct Code (the "Code") is set forth in
Handbook Rule XIII. It applies "to students, faculty and staff
of UNH Law." UNH Law Student Handbook (2015-16) ("Handbook"),
Rule XIII-1 A(3)(a) at 87. Section F(1)(b) of Rule XIII-1
provides that [a]ny offense involving theft . . . [that] would
be at least a misdemeanor under New Hampshire or United States
law is also a violation [of the Code] if . . . [i]t at least
partially occurs on property used or rented by UNH Law for
nonresidential purposes." Handbook Rule XIII-1 F(1)(b) at 90.

The Handbook also spells out UNH Law's leave of absence
policy, in Rule XI A, which provides in pertinent part as
follows:

> A student who has completed at least one (1) semester of
> full-time enrollment at UNH Law and who is eligible
> academically to continue, may take a leave of absence
> for up to one year from UNH Law. . . . Students who have
> taken a leave of absence for more than one year must
> reapply for admission, with advance standing, through
> the Admission's [sic] office.

Handbook Rule XI A at 83.

_____

silence on this point as conceding that only the UNH Law Student
Handbook is applicable in this case.

[2] Mateo filed his objection and exhibits in hard copy only. The
motion itself and his memorandum of law (collectively Doc. No.
59) have been scanned and are part of the Electronic Case File
("ECF"), but the exhibits to his objection are available in
paper form only. As such, citations to the exhibits to Mateo's
objection do not include an ECF number.

1.   <u>Events Giving Rise to Mateo's Potential Conduct Code</u>
     <u>Violation</u>

On the night of October 31, 2015, a UNH Law student group
hosted a catered on-campus Halloween party. Doc. No. 57-2 at 3.
According to the allegations of two UNH Law students, Mateo
stole four bottles of wine from the Halloween party and, later,
left money in one of the students' mailboxes to pay for the
wine. Doc. No. 57-2 at 3. Catering staff confirmed that wine had
been stolen from the party. Letters from Centennial Inn Staff,
Ex. 1E to Canning Decl., Doc. No. 57-7 at 2-4. Mateo currently
denies any "knowledge of any wine allegedly taken from the event
. . . ." Pl.'s Answers to Defs.' Interrogs., Ex. 2 to Defs.'
Mot., Doc. No. 57-16 at 3.

In the early morning hours of November 1, after allegedly
taking the wine from the party, Mateo pushed his girlfriend,
grabbed her by the throat, and put her in a chokehold. Doc. No.
57-16 at 3-4. Concord Police arrested Mateo, and he later
pleaded guilty to simple assault. Doc. No. 57-16 at 4.

2.   <u>UNH Law's Initial Response and Communications about</u>
     <u>the Conduct Code</u>

Upon learning of the theft and assault allegations, Canning
sent him an email on November 2 that stated:

> In light of allegations of criminal behavior against
> you, based on events that took place on and off the law
> school campus on Saturday, October 31, 2015, you are
> temporarily barred from attending classes and being on
> UNH Law School property until further notice. The Law

> School Administration will conduct a review of the
> police report, related documents and individual
> statements to determine the next steps going forward. We
> will be in touch with you by the end of the week when
> you will meet with Law School Administration.

Email from Canning to Mateo (Nov. 2, 2015, 10:52 AM), Ex. 1D to

Canning Decl., Doc. No. 57-6 at 2. She later explained that she

was acting pursuant to the Dean's powers under Rule XIII-1 L(1)[3],

which placed Mateo on what I refer to as "suspension."

Canning convened the aforementioned meeting with law school

administration on November 5. Doc. No. 57-2 at 3–4. Then-UNH Law

Dean Margaret McCabe and UNH Counsel Karyl Martin also attended.

Meeting Notes, Ex. 1F to Canning Decl., Doc. No. 57-8 at 2. The

parties disagree on what was said during the meeting.

Canning's contemporaneous notes state that she "started the

meeting [by] saying that the goal was to find out what

transpired [the previous] weekend, the extent of [Mateo]'s

involvement and what steps [the parties] need[ed] to take going

forward." Doc. No. 57-8 at 2. She explained that the "authority

for the meeting came from the Conduct Code, [Rule XIII-1 L(1),]

which outlines the 'Powers of the Dean' and his ability to

---

[3] Rule XIII-1 L(1) provides in pertinent part that "[n]othing in
these or other rules shall limit the power of UNH Law, through
the Dean or the Dean's designee, to require the immediate
removal of any person from its premises if, in the sole
discretion of the Dean or designee, such removal is in the best
interests of UNH Law." Handbook Rule XIII-1 L at 91.

remove students from the law school campus." Doc. No. 57-8 at 2.
Mateo admitted to drinking too much and to leaving money to pay
for the wine but did not remember attending the party. Doc. No.
57-8 at 2. According to Canning, she told Mateo that he could
either be required to take a leave of absence pending resolution
of the "issues that led to [his suspension]," or he could take a
leave of absence "on his own volition." Doc. No. 57-8 at 2. "If
he took a leave on his own, [the administration] would require
that he resolve the Conduct Code charge that [would] be filed
against him before he [would be] considered eligible to return."
Doc. No. 57-8 at 2. Only the wine theft is mentioned as a
Conduct Code violation; the meeting notes make no mention of the
assault. Although Mateo "was told he could take the evening to
decide which option he would choose[, h]e said he was ready to
decide and wanted to take a leave of absence." Doc. No. 57-8 at
2.

In Mateo's telling, Canning told him that he "could take a
leave of absence . . . or the University would move to expel
[him]." Mateo Dep., Ex. 1 to Defs.' Reply to Pl.'s Obj., Doc.
No. 61-1 at 4-5. He denies that he was told about any options
for resolving the potential Conduct Code charge during the
meeting. Doc. No. 61-1 at 4.

Mateo sent Canning an email the following day, in which he
confirmed his mailing address and wrote, "Yesterday we spoke

about a letter you would send me concerning the law school's decision. . . . I will require this letter for my records in upcoming proceedings." Email from Mateo to Canning (Nov. 6, 2015), Ex. 1G to Canning Decl., Doc. No. 57-9 at 2. Canning responded that she would send the requested letter. Email from Canning to Mateo (Nov. 6, 2015), Ex. 1G to Canning Decl., Doc. No. 57-9 at 2. She provided her contact information and told Mateo to call or email "if [he] need[ed] anything in the future, or [had] questions." Doc. No. 57-9 at 2. She also provided him with the contact information of an attorney in Concord "who has done a number of pro bono cases for law students, both in the courts and through the Conduct Code." Doc. No. 57-9 at 2. She offered to contact the attorney to ask if he would represent Mateo "in the Conduct Code proceeding that is currently not scheduled." Doc. No. 57-9 at 2.

Canning sent Mateo a letter on November 9 confirming his decision to take a leave of absence.[4] Letter from Canning to Mateo (Nov. 9, 2015), Ex. 1H to Canning Decl., Doc. No. 57-10 at 2. The subject line of the letter reads "Withdrawal from JD Program[;] Conditional Return." Doc. No. 57-10 at 2. The letter

---

[4] Both sides appear to treat the terms "leave of absence" and "withdrawal" interchangeably. I will use the term "leave of absence" to describe Mateo's departure from the school except where the evidence suggests that a different term was used.

"confirms [Mateo's] voluntary withdrawal from the Juris Doctor program at [UNH Law] effective November 5, 2015 and the conditions under which [he] may return." Doc. No. 57-10 at 2. The letter placed two conditions on Mateo's return. First, the letter stated, "If you decide to request readmission to the JD program, you must demonstrate readiness to return by providing documentation from a licensed alcohol treatment provider stating that the issues that led to your withdrawal have been resolved." Doc. No. 57-10 at 2. Next, it explained that "if you submit a request for return, you will be the subject of a Conduct Code complaint that must be resolved favorably prior to matriculation. The complaint involves the theft of four bottles of wine from the caterer at an on-campus event on October 31, 2015." Doc. No. 57-10 at 2.

The letter then specified that the complaint would be based on UNH Law Academic Rule XIII-1, F(1)(b) (quoted above). Doc. No. 57-10 at 2. Finally, the letter explained that "ABA Standards and UNH Law's Academic Rules (Rule 1 B (7)) require that students complete the requirements for the JD degree no later than eighty-four (84) months after commencing the Juris Doctor degree. This means that if you return, the degree must be completed by August 2021." Doc. No. 57-10 at 2.

3.   Mateo's First Readmission Request and Application to
     Suffolk Law School

Nearly eighteen months passed during which Mateo did not
contact Canning or any other UNH Law official. The first time he
did, was in a May 1, 2017 email, in which he asked Canning if
they could "meet sometime soon to discuss the procedure for
recovering good standing with the law school." Email from Mateo
to Canning (May 1, 2017, 4:10 PM), Ex. 1J to Canning Decl., Doc.
No. 57-12 at 9. Canning replied on May 5, attaching her November
2015 letter and informing Mateo that "in order . . . to be
eligible to return to the JD program and regain [his] good
standing, [he would] need to resolve the Conduct Code Charge
against [him]." Email from Canning to Mateo (May 5, 2017, 2:19
PM), Ex. 1J to Canning Decl., Doc. No. 57-12 at 9. Canning
provided Mateo with two options: if he was planning to pursue
his JD at another law school, she would "write a letter to
confirm [his] status at [UNH Law]"; or, if Mateo wished to
return to UNH Law, Canning would "need to submit the charge to
[UNH Law's] Conduct Code Officer and he/she [would] need to
investigate it, make a formal finding and submit it to the
Conduct Code Council for a hearing." Doc. No. 57-12 at 8-9.

Mateo replied that he needed a "letter of good standing
from UNH Law" as part of a transfer application to another law
school. Email from Mateo to Canning (May 5, 2017, 3:22 PM), Ex.

1J to Canning Decl., Doc. No. 57-12 at 8. Canning replied that
Mateo would "need to resolve the Conduct Code issue before [she
could] give [him] a letter of good standing." Email from Mateo
to Canning (May 5, 2017, 3:54 PM), Ex. 1J to Canning Decl., Doc.
No. 57-12 at 8. She then explained the two types of letters she
could potentially write for him: (1) if he were to resolve the
Conduct Code issue through the Conduct Code process, she would
write him a "letter based on the findings" of that process; or
(2) she could write a letter stating that Mateo was "ineligible
to return until the Conduct Code Charge pending against [him] is
resolved." Doc. No. 57-12 at 7-8.

Mateo initially replied that he would like to resolve the
Conduct Code charge. Email from Mateo to Canning (May 5, 2017,
4:31 PM), Ex. 1J to Canning Decl., Doc. No. 57-12 at 7. Later,
however, he sent another email stating that he "would like to
rescind [his] earlier request for a [C]onduct [C]ode hearing"
and instead preferred Canning's "second option," namely, that
she write a letter explaining Mateo's current status at UNH Law.
Email from Mateo to Canning (May 22, 2017, 2:13 PM), Ex. 1J to
Canning Decl., Doc. No. 57-12 at 6-7. Canning sent Mateo an
email providing him with the requested letter. Email from
Canning to Mateo (May 24, 2017, 12:51 PM), Ex. 1J to Canning
Decl., Doc. No. 57-12 at 6. Mateo then asked Canning to send an
original copy of the letter directly to Suffolk University Law

11

School ("Suffolk Law"). Email from Mateo to Canning (June 26, 2017, 4:22 PM), Ex. 1J to Canning Decl., Doc. No. 57-12 at 6.

UNH Law sent the letter Mateo requested on July 13. Letter from Canning to Suffolk Law (July 13, 2017), Ex. 1K to Canning Decl., Doc. No. 57-13 at 2. The letter explained Mateo's standing at UNH Law as follows:

> Mr. Mateo matriculated in the J.D. program at UNH Law in the fall 2014 semester. At the start of his second year, during the fall 2015 semester, Mr. Mateo was involved in an incident on campus that resulted in a Conduct Code Charge being filed against him. As a result of the on-campus incident and the pending charge, Mr. Mateo decided to take a leave of absence from the J.D. Program. He was advised that prior to seeking readmission to the program, he would be required to submit to the Conduct Code process and resolve the pending charge against him.
>
> Currently, Mr. Mateo is not in good standing and is ineligible to return to the program until the pending Conduct Code Charge is resolved.

Doc. No. 57-13 at 2.

Suffolk Law School rejected Mateo's application after it received Canning's letter. Letter from Suffolk Law to Mateo (July 27, 2017), Ex. 5B to Mateo Decl. at 1. Mateo contacted the Suffolk Law Associate Dean of Admissions regarding his rejection and was informed that "Suffolk Law will not admit applicants who are not in good standing at a prior law school." Email from Suffolk Law Assoc. Dean of Admiss. Matthew D. Gavin to Mateo (Oct. 25, 2017, 4:39 PM), Ex. 5E to Mateo Decl. at 1.

Following his rejection, Mateo sent Canning an email
request that she "submit the pending charge against [him] to the
Conduct Code Officer and begin the procedure." Email from Mateo
to Canning (Aug. 7, 2017), Ex. 1L to Canning Decl., Doc. No. 57-
14 at 3. Canning replied that UNH Law would "only pursue an
outstanding Conduct Code Charge against a currently matriculated
student" and that if he wished to commence the process, he would
"need to confirm [his] desire to re-enroll in the [J.D.]
program." Email from Canning to Mateo (Aug. 21, 2017, 4:02 PM),
Ex. 1L to Canning Decl., Doc. No. 57-14 at 2.

4.   Mateo's Second Readmission Request and Subsequent
     Reapplication to and Rejection from UNH Law

After waiting nearly five months to respond to Canning's
email, Mateo confirmed his "desire to re-enroll in UNH Law's JD
Program" in an email. Email from Mateo to Canning (Jan. 16,
2018, 3:42 PM), Ex. 1L to Canning Decl., Doc. No. 57-14 at 2. In
her reply, Canning wrote, "It has been over two years since you
withdrew from the JD program. Therefore, we suggest you reapply
with advanced standing through our Admissions Office."[5] Email
from Canning to Mateo (Jan. 23, 2018), Ex. 1M to Canning Decl.,
Doc. No. 57-15 at 2. She further explained that "if the

---

[5] As noted above, Rule XI A of the Handbook provides that
"Students who have taken a leave of absence for more than one
year must reapply for admission."

Admissions team extends an offer of admission to you, we will
initiate the Conduct Code process. If you gain an offer of
admission, and the Conduct Code Charge is resolved in your
favor, you will be eligible to continue in the JD program." Doc.
No. 57-15 at 2.

Mateo applied for advanced standing admission to UNH Law
for the Fall 2018 semester. UNH Law Admis. Appl., Ex 3A to Decl.
of Leah Plunkett ("Plunkett Decl."), Doc. No. 57-18 at 2. UNH
Law rejected his application on June 4. Letter from UNH Law Dir.
of Admiss. Brenda Brooks, Ex. 3C to Plunkett Decl., Doc. No. 57-
20 at 2. In her letter of rejection, Admissions Director Brooks
gave two reasons for the school's decision. First, Mateo had not
provided documentation from a licensed alcohol treatment
provider stating that the issues for his earlier withdrawal had
been resolved, as was required of him in the letter confirming
his withdrawal. Doc. No. 57-20 at 2. Next, she addressed the
personal essay submitted with Mateo's application.

> The Admissions Committee found that your personal
> account of the incidents leading up to your voluntary
> withdrawal from UNH Law, while clearly heart-felt [sic],
> was incomplete for readmission purposes. Although you
> provided a personal, historical context for your
> actions, the account failed to fully address any
> continuing commitment to be an attorney or how this
> experience will inform your professional behavior and
> the exercise of sound judgment and personal
> responsibility in the future. The Committee shared
> concerns about your willingness to ask for assistance
> when needed, your motivation to return to law school,
> your ability to adjust back into a rigorous academic

program, and acknowledgement of and willingness to confront these challenges.

As a statement that will later be included in your bar application, this statement did not demonstrate sufficient growth and readiness to return to pursuit of a legal career at UNH School of Law.

Doc. No. 57-20 at 2.

### 5.   Mateo's Transfer Admission Application to New England Law School | Boston

Mateo later applied for transfer admission to New England Law School | Boston ("NE Law"). Mateo Decl. at 6. As part of his application, he requested that UNH Law send a letter of his current standing to the NE Law Office of Admissions. Email from Mateo to Canning (July 9, 2018, 3:37 PM), Ex. 3D to Plunkett Decl., Doc. No. 57-21 at 4. UNH Law sent a letter to NE Law on July 18, 2018. Email from Christine Rosseau to Mateo (July 18, 2018), Ex. 3D to Plunkett Decl. Doc. No. 57-21 at 2. Neither party has provided a copy of this letter.

NE Law denied Mateo's transfer application. Email from NE Law Dir. of Admiss. Michelle C. L'Etoile (July 31, 2018, 11:25), Ex. 5G to Mateo Decl. at 1.

## B.   **Litigation History**

Mateo filed this suit in September 2018 in the U.S. District Court for the District of Massachusetts, alleging violations of his Fourteenth Amendment right to due process, as well as common law claims of defamation, NIED, and IIED. Compl., Doc. No. 1 at 7-8. Defendants UNH Law and Canning moved for the

suit to be dismissed for lack of personal jurisdiction or, in the alternative, to dismiss the defamation claim under Federal Rule of Civil Procedure 12(b)(6) and transfer the remaining claims to the U.S. District Court for the District of New Hampshire. Defs.' Mot. to Dismiss, Doc. No. 9 at 1–2. The court denied defendants' motion to dismiss for lack of personal jurisdiction but granted the motion to dismiss the defamation claim because Mateo had "fail[ed] to allege that defendants published statements about Mateo that were false (or that they were true but sent with actual malice)." Mem. and Order, Doc. No. 23 at 15. The District of Massachusetts further determined that New Hampshire was the proper venue for this case and transferred it to this court. Doc. No. 23 at 18.

Mateo amended his complaint twice. See First Am. Compl, Doc. No. 33; Second Am. Compl., Doc. No. 40. Although he never reasserted his defamation claim, he added claims for negligence and breach of contract. Doc. No. 40 at 10–14. On February 3, 2020, I denied Mateo's request to amend his complaint a third time.

Defendants now move for summary judgment on all claims. Doc. No. 57 at 1–2.

### III. ANALYSIS

Mateo's principal claim is that defendants violated his

16

Fourteenth Amendment right to due process by refusing to give him a hearing on the potential Conduct Code complaint. He also asserts state tort law claims for IIED, NIED, and negligence. Finally, he alleges that defendants breached his contract with UNH Law by failing to comply with the Code of Conduct. As I explain below, Mateo cannot possibly succeed on any of his claims.

A.    **<u>Due Process Claim (Count I)</u>**

"The Due Process Clause prohibits a state from depriving a person of 'life, liberty, or property, without due process of law.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (quoting U.S. Const. amend. XIV, § 1.). A procedural due process claim has two components: First, the plaintiff must prove that he has been deprived of a protected property or liberty interest; and second, he must prove that the process provided to protect the interest was constitutionally inadequate. Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 11 (1st Cir. 2013); <u>accord</u> Johnson v. Rodriguez, 943 F.2d 104, 109 (1st Cir. 1991) ("Before reaching the question of whether the procedures attendant upon a claimed deprivation were constitutionally sufficient, we must ask whether there exists a liberty or property interest which has been interfered with by the State.") (internal quotation marks omitted). Mateo identifies three property or liberty interests that, he argues,

17

UNH Law deprived him of without a constitutionally required hearing: (1) his status as a student at UNH Law, (2) the credits he acquired at UNH Law prior to his leave of absence, and (3) his good name and reputation. I analyze each in turn and conclude that none is sufficient to sustain Mateo's due process claim.

1.   Status as a Student at UNH Law

Mateo argues that he had a protected property interest in his status as a student at UNH Law. The First Circuit Court of Appeals has required that public education institutions "recognize a student's legitimate entitlement to a public education as a property interest[,] which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." Haidak v. Univ. of Mass.-Amherst, 933 F.3d 56, 65 (1st Cir. 2019) (internal quotation marks omitted) (quoting Goss v. Lopez, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). A mere applicant, however, has no such property interest in prospective student status subject to the discretionary approval of the law school. See Davila-Lopes v. Zapata, 111 F.3d 192, 195 (1st Cir. 1997) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 92 L. Ed. 2d 548 (1972)) ("[T]o have a constitutionally protected interest, one must have more than an abstract need[;] one must

have a legitimate claim of entitlement, defined by an existing rule or understanding that stems from an independent source such as state law . . . ." (internal quotation marks omitted)); cf. Jones v. City of Boston, 752 F.3d 38, 56 (1st Cir. 2014) (holding that recipient of contingent offer of employment did not have a cognizable property interest in the offered position sufficient to require a hearing before the offer was revoked).

Under UNH Law's leave of absence policy, a student, such as Mateo, who has "taken a leave of absence for more than one year must reapply for admission, with advance standing, through the Admission's [sic] office." Handbook Rule XI A at 83. Thus, once Mateo's leave extended beyond one year, he had no greater interest in his student status than any other applicant. This is far from a "legitimate claim of entitlement," Davila-Lopes, 111 F.3d at 195, and, therefore, does not qualify as a protected liberty or property interest.[6]

---

[6] Mateo also argues that he was de facto expelled by UNH Law at a time when he still had a property interest in his student status. This occurred, he contends, when Canning gave him the option either to take a voluntary leave of absence or UNH Law would "move to expel" him. This argument fails. Canning's letter confirming Mateo's leave of absence clearly contemplates the potential for his return, provided he submit documentation from a licensed alcohol treatment provider and submit to the conduct code process. Doc. No. 57-10 at 2. Under the Code, only the Conduct Code Council — not the assistant dean of students — has the authority to expel a student. Handbook Rule XIII-2 D(1)(d) at 97. Mateo has adduced no evidence in support of his assertion that, at the time he took his leave, "UNH Law had already decided [he] could not remain enrolled." Doc. No. 59 at 21.

2.   <u>Credits Acquired Prior to Mateo's Leave of Absence</u>

Mateo next argues that UNH Law deprived him of a protected property interest in the thirty academic credits he had earned in the year prior to his suspension and leave of absence. Mateo cites no law supporting his contention that academic credits give rise to a constitutionally protected property interest. Even if I were to conclude, however, that such an interest exists, Mateo's argument would still fail because UNH Law has not deprived him of any credits.[7] The credits remain on his transcript. UNH Law Transcript of Joel Mateo (June 1, 2017), Ex. 5H to Mateo Decl. at 1. Nothing in the record indicates that UNH Law ever even attempted to revoke them. This argument thus cannot form the basis of a due process claim.

3.   <u>Good Name and Reputation</u>

Finally, Mateo argues that he has a protected liberty interest in his good name and reputation, and that UNH Law

---

Mateo's leave of absence, whether taken at his own volition or required by UNH Law, was not a permanent or complete revocation of his student status and, therefore, was not tantamount to an expulsion. Cf. Lyons v. Sullivan, 602 F.2d 7, 10 (1st Cir. 1979) (identifying "no constitutional infirmity" in public employer's offer to give employee the choice between taking voluntary leave and submitting to formal removal proceedings).

[7] Mateo further cites no law in support of his argument that UNH Law deprived him of a protected interest by <u>devaluing</u> his credits. I, similarly, find no legal support for this attenuated theory.

deprived him of that interest when it sent letters explaining his standing to Suffolk Law and NE Law. The First Circuit has held that "there are circumstances in which [a public employee's] dismissal may so damage his reputation that his liberty interest . . . under the Due Process Clause[] is infringed." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 61–62 (1st Cir. 2018) (citing Paul v. Davis, 424 U.S. 693, 708-09, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); Burton v. Town of Littleton, 426 F.3d 9, 14 (1st Cir. 2005)). To establish a due process claim to a name-clearing hearing, a public employee must satisfy five elements:

> (1) the alleged defamatory statement must seriously damage the employee's standing and association in the community; (2) the employee must dispute the statement as false; (3) the statement must have been intentionally publicized by the government; (4) the stigmatizing statement must have been made in conjunction with an alteration of the employee's legal status, such as the termination of his employment; and (5) the government must have failed to comply with the employee's request for a name-clearing hearing.

Buntin v. City of Boston, 813 F.3d 401, 406 (1st Cir. 2015) (citing Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002)).

Even if I were to recognize a protected, reputation-based liberty interest in the public education context, Mateo's claim would fail because he has satisfied neither the second, nor the third, element.

Canning's letter to Suffolk Law makes several statements, none of which Mateo disputes as false. He does not dispute that he "was involved in an incident on campus that resulted in a Conduct Code Charge being filed against him." Doc. No. 57-13 at 2. Nor does he dispute that, as a result of this, he "decided to take a leave of absence from the J.D. Program." Doc. No. 57-13 at 2. Nor does he dispute that UNH Law "required [him] to submit to the Conduct Code process" prior to returning to the program. Doc. No. 57-13 at 2. Although Mateo does deny taking the wine from the on-campus party, Canning's letter makes no mention of this alleged theft.[8]

Mateo's failure to prove the second element alone would be sufficient to doom his reputation-based due process claim. More fundamentally, however, Mateo has failed to show that UNH Law intentionally published the allegedly stigmatizing statements. Canning first sent the letter explaining Mateo's status to Mateo directly. It was only after Mateo had the opportunity to read the letter and specifically requested that Canning send the

---

[8] I need not determine whether the statements in the letter are, in fact, false (only that Mateo does not dispute them as false). It is, however, worthy of mention that, prior to transferring this case to the District of New Hampshire, the District Court judge in Massachusetts dismissed Mateo's defamation claim based on these letters on the ground that Mateo had "fail[ed] to allege that defendants published statements about [him] that were false (or that they were true but sent with actual malice)." Doc. No. 23 at 15.

letter to Suffolk Law that she did so. Doc. No. 57-12 at 5-6.
Another UNH Law employee later sent the letter to NE Law at
Mateo's request. Doc. No. 57-12 at 4. Even if Mateo disputed the
content of the letter, he cannot generate a due process
requirement for a name-clearing hearing based upon statements
that Mateo, himself, caused to be publicized. Under these
circumstances, Mateo has no due process right to a name-clearing
hearing.

Having concluded that Mateo had no protected property or
liberty interest at the time he requested a hearing, his due
process claim fails as a matter of law. I, therefore, need not
address whether the opportunity for a hearing under the Code was
constitutionally adequate, or whether defendants acted with
reckless or callous indifference to Mateo's rights.

B.   **State Tort Law Claims (Counts II – IV)**

In Counts II – IV, Mateo asserts state law tort claims for
IIED (Count II), NIED (Count III), and negligence (IV).[9] Of

---

[9] To the extent Mateo argues a separate count for breach of
confidentiality, or that a breach of confidentiality supports
one of his other state law tort claims, that claim also fails
for numerous reasons. Mateo appears to argue that Rule XIII-2 C
of the Handbook imposed a duty on Canning to keep certain
communications between Mateo and herself confidential; that the
November 5, 2015 meeting was such a communication; and that
Canning breached that duty by writing the March 24, 2017
"Conduct Code Complaint" document. Because no Conduct Code
complaint was ever formally filed against Mateo, it is not clear
that Rule XIII-2 C, which refers to a duty of confidentiality
with respect to the "accused", even applies to Mateo. Even if I

course, I have the discretion to decline to exercise supplemental jurisdiction over Mateo's state law claims where I have dismissed all of the claims over which I have original jurisdiction. See González-De-Blasini, v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004); accord 28 U.S.C. § 1367(c)(3). At the same time, "the mere fact that [Mateo's federal claim] ultimately fails on the merits does not, by itself, require that all pendent state-law claims be jettisoned." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). "[T]he exercise of supplemental jurisdiction in such circumstances is wholly discretionary." Id. Here, where the parties have completed discovery and disposition of the state law claims is relatively simple, the circumstance weighs in favor of my retaining supplemental jurisdiction over these claims.

Mateo's state law claims fail because UNH Law and Canning are entitled to immunity under Section 507-B of the New Hampshire Revised Statutes Annotated. Under Section 507-B:5,

---

were to find that Rule XIII-2 C applied generally, it is not clear that a duty of confidentiality would apply to a non-private meeting that was also attended by the Dean of UNH Law and UNH Law counsel. But, more fundamentally, even if I were to find that such a duty of confidentiality existed, Mateo has adduced no evidence that Canning violated that duty. He has provided no proof that Canning's document, which she testified was drafted as a note to her file to "memorialize what happened," was ever seen by anyone other than Canning herself. On these facts, Mateo has failed to show that any breach of confidentiality occurred.

"[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury[,] or property damage except as provided by this chapter or as is provided or may be provided by other statute." N.H. Rev. Stat. Ann. § 507-B:5. This immunity extends to a "present or former employee, trustee, or official of a governmental unit," provided that the individual "was acting within the scope of his or her office and reasonably believed in the legality of his or her actions." N.H. Rev. Stat. Ann. § 507-B:4 IV.

The only exception set forth in the chapter is found in Section 507-B:2, which states that "[a] governmental unit may be held liable for damages . . . caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance[,] or operation of all motor vehicles and all premises . . . ." N.H. Rev. Stat. Ann. § 507-B:2. Governmental defendants have successfully invoked Section 507-B:5 immunity in cases of negligence, see, e.g., Donlon v. Hillsborough Cty., No. 18-CV-549-LM, 2019 WL 2062436, at *10 (D.N.H. May 9, 2019) (denying as futile plaintiff's motion to amend negligence complaint against county due to county's immunity under Section 507-B:5), as well as NIED and IIED, see, e.g., Hewes v. Belknap Cty., No. 17-CV-394-SM, 2018 WL 922356, at *5-6 (D.N.H. Feb. 15, 2018) (granting summary judgment to county on plaintiff's state law NIED and IIED claims due to Section 507-B:5 immunity).

Mateo both fails to identify any exception to Section 507-B:5 that might apply to the USNH and advances no argument whatsoever refuting the USNH's entitlement to immunity under this statute. I, similarly, find no compelling reason to deny the USNH's assertion of immunity, and so I grant its motion for summary judgment on Counts II – IV.

Mateo argues only that Canning is not entitled to immunity because she was not acting within the scope of her official duties, as is required by Section 507-B:4 IV. Mateo provides no explanation for this theory beyond asserting, without support, that Canning "was necessarily acting outside the scope of her official duties." Doc. No. 59 at 44. This argument is clearly without merit, because Mateo complains only of actions taken by Canning pursuant to her duties as Associate Dean of Students for UNH Law. Because no exception to New Hampshire's statutory bar on tort liability for governmental units applies, defendants are entitled to summary judgment on Mateo's IIED, NIED, and negligence claims.

C.   **Breach of Contract Claim (Count V)**

Mateo's breach of contract claim is based upon an argument that the Handbook constituted a contract between Mateo and UNH Law. In his objection to the motion for summary judgment, Mateo "concedes [that] the [Handbook] is not a contract between UNH Law and [himself]." Doc. No. 59 at 41. Because Mateo has

26

abandoned this argument and identifies no other source of contract between himself and UNH Law, his breach of contract claim fails as a matter of law. See <u>Wilcox Indus. Corp. v. Hansen</u>, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) ("In order to state a breach of contract claim under New Hampshire law, [plaintiff] must allege sufficient facts to show . . . that a valid, binding contract existed between the parties . . . .").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I grant defendants' motion for summary judgment (Doc. No. 57) on all counts. The clerk of the court is directed to enter summary judgment in accordance with this order and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 20, 2020

cc:  Joel Mateo, pro se
     Donald L. Smith, Esq.